IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LARRY G. LANTZ,

    Plaintiff,

v.                                             No. 4:20-cv-308-JM
                                                                  JURY DEMAND

ETL LOGISTICS, INC.,
EDWARD E. SIGLER, JR., and
ESTHER M. ONDARA,

    Defendants.
_____/

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS ETL LOGISTICS, INC., EDWARD E. SIGLER, JR. AND ESTHER ONDERA**

**I.    SUMMARY**

ETL Logistics is a moving target: despite claiming in **formal discovery responses** that evidence is "**no longer** available" because "company closed," ETL Logistics now shifts, claiming **Plaintiff** has not shown the requested documents existed. ETL Logistics asserts they have **no** duty to preserve evidence unless and until plaintiff files a formal lawsuit. Notwithstanding this misstatement of law, Defendants remaining argument is that plaintiff has suffered no prejudice, even though the documents requested are the only ones that could establish what ETL Logistics reviewed and knew when they chose to hire and retain Sigler as a professional truck driver. This Court should not tolerate Defendants' behavior and should issue sanctions, set forth below.

## II.     LAW AND ARGUMENT

### A. The duty to preserve evidence arises when a party knows or should have known that evidence is relevant to future litigation.

Defendants argue they had no duty preserve the requested documents and evidence because "Mr. Lantz did not file suit until March 25th, 2020…" (Def. Brief, p. 12). The position is flat wrong and contrary to blackletter law holding the "[d]uty to preserve evidence begins when a party knows or **should have known** that the evidence is relevant to **future** or current litigation." *See Stevenson v. Union Pac. R.R. Co.,* 354 F.3d 739, 746 (8th Cir. 2004) (emphasis added); *see also Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Defendants fail to cite a single authority to support the proposition that the duty to preserve evidence can only exist at the instant the plaintiff files a lawsuit.

In *Stevenson v. Union Pac. R.R. Co.*, the court found the defendant was obligated to preserve voice tapes from the date of a crash because the defendant knew those tapes would be relevant in *future* litigation and the defendant's claim representative received notice of the accident shortly after it occurred. *Stevenson v. Union Pac. R.R. Co.,* 354 F.3d at 746-748. The Eighth Circuit Court of Appeals held the district court did not abuse its discretion in finding the prelitigation destruction of the tapes was in bad faith and in sanctioning the defendants by instructing the jury:

> "you may, but are not required to, assume that the contents of the voice tape and track inspection records would have been adverse, or detrimental, to the defendant."

*Stevenson v. Union Pac. R.R. Co.*, 354 F.3d at 746. The defendant contended that it taped over the voice recordings under a routine procedure wherein tapes automatically were recorded over after ninety (90) days. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d at 746 ("although the document retention policy was not unreasonable or instituted in bad faith, it was unreasonable and amounted to bad faith conduct for Union Pacific to adhere to this principle in the circumstances of this case.").

The court also found the plaintiffs suffered prejudice because there were no other records of comments between the train crew and dispatch at the time of the crash. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d at 748.

Under the holding of *Stevenson v. Pac. R.R. Co.,* the duty to preserve evidence arises when the party received notice of the event giving rise to the litigation and they knew or **should have known** that the evidence is relevant to **future** or current litigation. Bad faith can be inferred by even the routine destruction of evidence under established document retention policies when the parties should have known materials would be relevant to future litigation.

### B. <u>Defendants failed to preserve critical evidence.</u>

Contrary to Defendants' assertions in their brief, Defendants have never once claimed the documents did **not** exist before this lawsuit was filed. Instead, the response of Defendants has uniformly been the "records are **no longer** available" or "company closed." (See ETL Logistics, Inc. to First Set of Interrogatories and Requests for Production of Documents, Docket Entry #33-5) (emphasis added). Defendants argue that because they had "ceased operations" they had no duty to

3

preserve evidence and it is "entirely reasonable" to destroy all evidence because Plaintiff's Request for Preservation did not specify a specific length of time defendants had to preserve evidence. (Def. Brief, Docket Entry #40-1, p. 12). The Request for Preservation could not have been more clear:

> Please be advised our office represents Larry Lantz for injuries he suffered in an accident which occurred on May 26, 2018 in Hazen, Prairie County, Arkansas. This letter is to formally demand the preservation of certain evidence related to this incident. **If you fail to properly secure and preserve the important pieces of evidence it may give rise to the legal presumption that the evidence would have been harmful to your side of the case**. **If you fail to preserve or maintain this evidence, we will seek any and all remedies available under theory or equity. The destruction, alteration, or loss of any of the below constitutes a spoliation**.

(Plaintiff's Request for Preservation, Exhibit 1 to Plaintiff's Motion for Sanctions, Docket Entry #33-1). In addition, both ETL Logistics and their insurance carrier were sent letters of representation by letters dated June 21, 2018 and June 26, 2018, respectively. (See attached Exhibits 1 and 2 hereto). Furthermore, ETL Logistics **admits** that its owner/officer, Wilson Ondara was **immediately** notified of the Crash:

**INTERROGATORY NO. 7:** Immediately following the Crash of May 26, 2018, please state:

---

    a.    The person at ETL who was first notified of the Crash.

    b.    The date and time this person was notified.

    c.    Whether anyone created a written record of the Crash, and if so, whom?

    d.    Is this record kept in any Vehicle Accident Investigation File or its equivalent?

    e.    Is this record kept in the ordinary course of business?

**ANSWER**: (a) Wilson Ondara; (b) not sure; (c) yes; Defendant has not been able to locate the Report of Accident; (d) yes; and (e) yes.

ETL Logistics further **admits** in sworn interrogatory responses that many requested documents did exist. Its driver employee Sigler did complete an application for employment and other pre-employment paperwork required under 49 C.F.R. § 391.21 and other:

5

> **INTERROGATORY NO. 14**: Did Edward Sigler complete an application for employment pursuant to 49 CFR 391.21 and/or any other pre-employment paperwork prior to employment by ETL?

---

> **ANSWER**: Yes.

Likewise, ETL Logistics admits in sworn interrogatory responses it maintained a database for its drivers for recording and auditing their logbook entries:

> **INTERROGATORY NO. 23**: Does ETL maintain a database for its drivers/contractors for recording and auditing their logbook entries and verifying if they are in compliance with federal safety regulations or is this function outsourced to another company? If it is outsourced, please identify to whom it is outsourced.
>
> **ANSWER**: Yes; self record keeping by ETL Logistics.

It is indisputable that Defendants knew or should have known the documents outlined in both the Plaintiff's Request For Preservation and Plaintiff's Request for Production of Documents evidence is relevant to **future** litigation. This fact is

established not only through the transmission of the formal Request for Preservation, but also that ETL Logistics officer was notified of the crash immediately after its occurrence. In addition, both ETL Logistics and its insurance carrier were notified with formal letters of representation sent by Plaintiff's Counsel less than one month after the day of the crash (see Exhibits 1 and 2 hereto).

### C. **Bad faith can be inferred by the Court even when documents are no longer available under document retention policies.**

As stated previously, courts can infer a defendant acted in bad faith when they adhere to standard document retention/destruction policies under circumstances where they knew or should have known those documents are relevant to future litigation. Bad faith can and should be inferred because, despite all the warning of the consequences of failing to preserve, the Defendants continue to this day to claim the "documents are no longer available" and "company closed" even though they and their carrier were sent no fewer than three (3) separate letters for preservation and/or representation. The Defendants' Insurance Carrier, AmTrust North America, even acknowledged receipt of Plaintiff's Letter of Representation on June 26th, 2018 (see acknowledgment letter from AmTrust North America attached as Exhibit 3 hereto). Not once did Defendants claim not to have created or possessed the requested documents until asserting these misleading statements now before this Court.

### D. **Plaintiff has suffered prejudice because there are no other documents that can establish what ETL Logistics reviewed and/or knew at the time they chose to hire and retain Sigler.**

The Plaintiff undoubtedly has been prejudiced by the non-production and failure of Defendant ETL to preserve the documents. No other documents can

establish what ELT Logistics reviewed and knew of the driving history, safety history, qualifications, and employment history of Sigler. Likewise, there are no other known documents, other than those requested by Plaintiff as to the maintenance history of the truck, its positioning and where and when Sigler had been driving the truck, which could be established through the driver logs that Defendants have failed to produce.

### E. **Plaintiff conferred in good faith and any continued conferences given the clear statement that all requested documents are "no longer available" is futile, unless Defendants have misrepresented the existence of those documents.**

The remainder of Defendants' Brief contains seven (7) pages of *ad hominem* attacks on Plaintiff's Counsel claiming the undersigned failed "to keep himself informed" of the Local Rules of Practice of this Court. Unprofessional personal attacks notwithstanding, Defendants' Response exhibits classic form over substance arguments and does not address the underlying issue: Defendants have **never** produced a single requested document despite Plaintiff's repeated good faith requests to do so. Plaintiff both conferred as to the document requests and certified to the Court, which was made part of the record on October 7th, 2020 (Docket Entry #11, p. 3). Despite this certification and further follow up correspondence dated June 15th, 2021 (Document number 33-6 and Defendants' Response, Document Number 33-7), Defendants never supplemented or provided one single responsive document, even after having received formal requests for preservation. More importantly, even when faced with the prospect of sanctions, Defendants continue to fail to produce and do not explain the non-production other than offering the weak suggestion that the

8

Plaintiff has not proven the destruction of critical evidence was intentional. Defendants have underscored the **futility** of further attempts to confer in the face of such blatant disregard of the Defendants' legal obligations and their clear statement that the documents are "no longer available." Absent a complete reversal of course to state an objection or change an answer outright (e.g., to claim documents never existed versus they are "no longer available"), there is nothing Plaintiff can do to compel a defendant to produce documents wherein the defendant claims they no longer exist. The documents admittedly existed and Defendants failed to preserve them.

### III.  CONCLUSION

Wherein, Plaintiff respectfully asks the Court to issue the following instruction the jury:

> "**You may, but are not required to, assume that the contents of the [list all documents requested by the Plaintiff that were not produced subject to proof at trial] would have been adverse, or detrimental, to the Defendant ETL Logistics, Inc.**"

Respectfully submitted,

THE LAW FIRM FOR TRUCK SAFETY, LLP

Matthew E. Wright, #22596
(*Admitted Pro Hac Vice*)
840 Crescent Centre Drive, Ste. 310
Franklin, TN 37067
Phone: (615) 455-3588
Fax: (615) 468-4540
matt@truckaccidents.com
www.truckaccidents.com

*Attorney for Plaintiff, Larry Lantz*

9

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing has been furnished by ECF, which serves notice to:

Staci Dumas Carson
Joseph C. Stepina
Watts, Donovan, Tilley
  & Carson, P.A.
2120 Riverfront Drive
Suite 275
Little Rock, AR 72202
*Attorney for Defendants*
*ETL Logistics, Inc. and Edward*
*Sigler, Jr.*

on July 28, 2021.

                                      Matthew E. Wright